IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VALERIE MONTOYA,

        Plaintiff,

v.   CV No. 19-1204 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Valerie Montoya's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 17), filed May 18, 2020; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 19), filed July 17, 2020; and Ms. Montoya's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 20), filed July 31, 2020.

Ms. Montoya filed applications for disability insurance benefits and supplemental security income benefits on December 6, 2016, alleging disability beginning February 11, 2011. (Administrative Record "AR" 12, 83-84). She later amended her disability onset date to December 6, 2014. (AR 369). In her applications, Ms. Montoya claimed she was unable to work due to varicose veins, post-traumatic stress disorder ("PTSD"), depression, and anxiety. (AR 281). Ms. Montoya's applications were denied initially on September 27, 2017, and upon reconsideration on May 16, 2018. (AR 98, 112, 131,

1

148). Shortly thereafter, Ms. Montoya requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 10, 2019. (AR 32, 193).

At the hearing, Ms. Montoya appeared before ALJ Michael Leppala with her attorney Laura Johnson and impartial Vocational Expert ("VE") Mary Weber. (AR 32, 365). On April 17, 2019, the ALJ issued his decision, finding Ms. Montoya not disabled at any time between her amended alleged onset date, December 6, 2014, through the date of his decision. (AR 22-23). Ms. Montoya requested review by the Appeals Council, which was denied, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (AR 1-2, 251-52); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("If the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision.").

In her Motion, Ms. Montoya argues the following errors require remand: (1) the ALJ failed to account for her subjective complaints as required by Social Security rulings and case law; (2) the ALJ erred by improperly weighing the opinion of Ms. Montoya's treating counselor; and (3) the ALJ improperly rejected the opinion of the psychological consultative examiner. (Doc. 17 at 1-2, 11-27). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ committed a harmful legal error, the Court finds Ms. Montoya's Motion shall be **GRANTED** and the case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted) . While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence

does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted) (alteration made).

## II. Applicable Law and Sequential Evaluation Process

A claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ proceeds to step five of the SEP. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing the claimant is able to perform other work in the national economy,

1. 20 C.F.R. pt. 404, subpt. P, app. 1.

considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

In her applications, Ms. Montoya alleged she was limited in her ability to work due to varicose veins, PTSD, depression, and anxiety. (AR 281). At step one, the ALJ determined Ms. Montoya had not engaged in substantial gainful activity since her amended alleged onset date. (AR 15). At step two, the ALJ found Ms. Montoya had the following severe impairments: status-post right ankle bimalleolar open reduction and internal fixation, sciatica, PTSD, and depression. (AR 15). At step three, the ALJ determined Ms. Montoya's impairments did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 15). The ALJ then found Ms. Montoya had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR 16-17). In addition, the ALJ found Ms. Montoya was further restricted with the following limitations:

> [She] is further limited to occasionally climb ramps or stairs[,] but never climbing ladders, ropes or scaffolds, occasionally balancing, stooping, crouching, kneeling and crawling. [She] can understand, carryout and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in [a] work setting, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to simple, routine, and repetitive tasks and she is best suited for jobs involving work primarily with things and not people.

(AR 17).

In formulating Ms. Montoya's RFC, the ALJ stated he considered Ms. Montoya's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. §§

404.1529, 416.929, and Social Security Ruling ("SSR") 16-3p. (AR 17). In addition, the ALJ stated he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (AR 17). The ALJ concluded that some of Ms. Montoya's impairments could be expected to cause her alleged symptoms, but he found the intensity, persistence, and limiting effects Ms. Montoya described were not entirely consistent with the evidence in the record. (AR 18).

As for the opinion evidence, the ALJ gave "some weight" to the testimony of Ms. Montoya's counselor, Patricia Martinez-Burr, Ph.D., but "little weight" to Dr. Martinez-Burr's mental assessment. (AR 19). The ALJ also gave "little weight" to a psychological intake assessment completed by Nelda Weber, LPCC, and opinions from the psychological consultative examiner, John Draper, Ph.D., and Ms. Montoya's treating psychiatrist, Randolph Baca, M.D. (AR 20). (AR 19). On the other hand, the ALJ gave "great weight" to the opinions of the State Agency psychological consultants Mark McGaughey, Ph.D., and Scott Walker, M.D. (AR 19). The ALJ gave "some weight" to the opinions of the State Agency physical consultants Betty Santiago, M.D., and Edward Bocian, M.D. (AR 20). Finally, the ALJ gave "little weight" to the opinions contained in Ms. Montoya's "personal care assistant documents" and third-party statements from Ms. Montoya's daughter, Aubree Chavez, and sister, Holly Montoya. (AR 20-21).

At step four, the ALJ found Ms. Montoya was unable to perform her past relevant work as a secretary and test technician. (AR 21). At step five, the ALJ determined Ms. Montoya had at least a high school education and could communicate in English. (AR 21). Relying on the VE's testimony, the ALJ found that considering Ms. Montoya's age, education, work experience, and assessed RFC, she could perform other work as a

merchandise marker and shelving clerk. (AR 21-22). After finding Ms. Montoya was able to perform other work existing in significant numbers in the national economy, the ALJ concluded she was "not disabled," as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g), from December 6, 2014 through the date of the decision. (AR 22).

## IV. Analysis

Ms. Montoya presents three arguments in her Motion. (Doc. 17 at 1). First, Ms. Montoya argues the ALJ erred in his analysis of her subjective complaints, contrary to Social Security rulings and case law. *Id.* at 24-27. Second, she asserts the ALJ erred by disregarding one of Dr. Martinez-Burr's opinions and improperly weighing another. *Id.* at 11-19. Finally, Ms. Montoya claims the ALJ improperly rejected the opinion of Dr. Draper. *Id.* at 20-23.

In response, the Commissioner asserts the ALJ's determination that Ms. Montoya was not disabled is supported by substantial evidence and legally sound. (Doc. 19 at 11). Specifically, the Commissioner contends the ALJ reasonably evaluated Ms. Montoya's subjective complaints and found them inconsistent with the medical evidence and other evidence in the record. *Id.* at 1-2, 22-24. Additionally, the Commissioner argues the ALJ reasonably evaluated the opinions of Dr. Martinez-Burr and Dr. Draper. *Id.* at 14-22.

### A. The ALJ's Consideration of Ms. Montoya's Subjective Complaints Under SSR 16-3p

In alleging harmful error, Ms. Montoya asserts the ALJ failed to "acknowledge" her lower extremity varicosities, which was a medically determinable impairment subject to the requirements of SSRs 16-3p and 98-6p, and the three-step analysis set forth under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). (Doc. 17 at 24-25). Ms. Montoya

states the ALJ did not consider her varicose vein "condition in his decision, much less in his subjective complaints analysis." *Id.* Having not given full credit to Ms. Montoya's statements or performed the requisite analysis under Social Security rulings and case law, Ms. Montoya alleges the decision's RFC is not based on substantial evidence. *Id.* at 26-27.

The Commissioner maintains that the RFC is supported by substantial evidence, and the ALJ properly and reasonably considered Ms. Montoya's subjective complaints. (Doc. 19 at 22-23). Specifically, the Commissioner asserts "the objective medical evidence contradicted [Ms. Montoya's] subjective complaints…including the findings of Drs. Baca and Draper…[and] findings of the Four Corners Behavioral Health." *Id.* at 22-23. Additionally, the Commissioner alleges the ALJ specifically acknowledged Ms. Montoya's varicose veins that "'require[d] multiple laser treatments and injections throughout her life' and that…'caused her constant pain.'" *Id.* at 24 (quoting AR 18). Further, the Commissioner contends Ms. Montoya's activities of daily living detracted from her subjective complaints. *Id.* at 23.

In evaluating the symptoms reported by a claimant, the ALJ must apply a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ determines whether the claimant has a medically determinable impairment that reasonably could be expected to produce the reported symptoms. *Id.* at *3. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. Objective medical findings include "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Licensed

physicians are considered acceptable medical sources. 20 C.F.R. §§ 404.1502(a)(1), 416.902(a)(1).

In the second step, the ALJ evaluates the "intensity and persistence" of the symptoms, such as pain, and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *4. In considering the "intensity, persistence, and limiting effects" of a claimant's symptoms, the ALJ examines "the entire case record." *Id.* At this step, the ALJ is also tasked with considering the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-*8; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

If the claimant's "statements about the intensity, persistence, and limiting effects" of her symptoms are consistent with the evidence of record, the ALJ will determine that the symptoms are "more likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8. If they are not consistent, the ALJ will find that the symptoms are "less likely to reduce [her] capacities to perform work-related activities." *Id.* The ALJ will also consider the claimant's attempts to seek medical

9

treatment for her symptoms, whether she followed recommended treatment, and the possible reasons for lack of treatment compliance. *Id.* at *9.

In discussing a claimant's subjective complaints, an ALJ's "single, conclusory statement" that a claimant's symptoms have been considered is insufficient. *Id.* at *10. Similarly, a recitation of the factors is inadequate. *Id.* Rather, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* On the other hand, "[s]tatements about [] pain and other symptoms will not alone establish [disability]." 20 C.F.R. §§ 404.1529(a), 416.929(a) (alteration made).

These subjective complaint assessments "are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990) (alteration made). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted).

The Tenth Circuit has set forth similar factors to consider a claimant's subjective complaints as those enumerated above; these factors are known as the "*Luna* factors." *Jimison ex rel. Sims v. Colvin*, 513 F. Appx. 789, 795 (10th Cir. 2013) (citing *Luna*, 834 F.2d 161); *see also Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*); *Paulek v. Colvin*,

662 F. Appx. 588, 593-94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*). Rather than conducting two near identical analyses, the Court will use the factors and applicable rules as provided in SSR 16-3p.

Here, the ALJ explained:

Ms. Montoya testified that she has had varicose veins, which have required multiple laser treatments and injections throughout her life. She stated that the varicose veins cause her constant pain, and she spends a lot of time recovering from the treatments. She testified that she can walk 30 minutes to an hour, but then the pain in her legs is bad. She stated that she can stand for about 15 minutes to 30 minutes before she feels pain. She testified that she can sit for about an hour. She stated that she can lift about 10 pounds with her right hand. She testified that she has bad problems with balance, uses a cane, and has problem climbing ramps and stairs, and would not climb ladders, ropes or scaffolds. She stated that she was prescribed a cane. She testified that she cannot stoop, squat or crawl. She stated that she has a hard time getting back up. She stated that she gets a caregiver for 12 hours every week.

(AR 18). While the ALJ acknowledged Ms. Montoya's complaints in his recitation of her testimony, he made no other mention of Ms. Montoya's varicose veins in his RFC discussion. (AR 18-22). Indeed, the ALJ failed to specify whether the condition was a medically determinable impairment, and if it was medically determinable, whether it was a non-severe or severe impairment. *See* (AR 15-17).

Although the ALJ made no mention of treatment records related to Ms. Montoya's varicose veins, the record contains significant evidence of treatment. *See, e.g.,* (AR 377-95, 441-49, 515-18, 597-600, 672-73, 771-99). Specifically, the record indicates that as early as January 2014, Ms. Montoya saw vascular specialist Chandran Vedamanikam, M.D., with reports of "long-standing pain in the lower extremities due to venous insufficiency." (AR 672). Based on her history, physical exam, and results from

a sonogram, Dr. Vedamanikam diagnosed Ms. Montoya with "significant venous insufficiency" and wrote that her "findings [were] consistent with most of the symptoms [Ms. Motoya] experiences." (AR 672) (alterations made). Dr. Vedamanikam also noted that Ms. Montoya's conservative treatment modalities appeared to have failed given her persistent symptoms. (AR 672).

In November 2015, Ms. Montoya established care with vascular specialist Gopal Reedy, M.D., with complaints of pain and swelling in her lower extremities. (AR 385). After performing an ultrasound, Dr. Reedy documented numerous medically significant findings and ultimately diagnosed Ms. Montoya with "lower extremity varicosities." (AR 386). At a subsequent appointment in January 2016, Dr. Reddy wrote that Ms. Montoya had "significant persistent left lower extremity pain and swelling. Venous duplex scan revealed severely abnormal varicosities with dilated left LSV [long saphenous vein]." (AR 381). Dr. Reddy recommended she undergo an "EVLT", or endovenous laser treatment, in her left leg "followed by microphlebectomy and sclerotherapy." (AR 382). In March 2016, Ms. Montoya underwent these procedures. (AR 383).

Ms. Montoya continued to frequently see Dr. Reddy for sclerotherapy treatments through at least November 2018. *See, e.g.,* (AR 384-85, May 2016), (AR 387, July 2016), (AR 392, August 2016), (AR 794, September 2018), (AR 778, October 2018), (AR 782, November 2018). At many of these appointments, Ms. Montoya continued to complain of pain in her calf and swelling in her legs; and in his physical examinations, Dr. Reddy documented inflammation and edema[2] in both legs. *See* (AR 442-43, March

---

2. Edema is swelling caused by excess fluid trapped in the body's tissues. *Edema*, https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493 (last accessed July 31, 2020).

12

2017), (AR 448-49, May 2017), (AR 446-47, December 2017), (AR 777, June 2018). Indeed, in May 2017 Ms. Montoya reported that despite wearing "elastic support" she had significant pain and swelling and "disabling symptoms." (AR 449); *see also* (AR 777, June 2018) (Ms. Montoya told Dr. Reddy that due to "severe symptoms" she wished to resume sclerotherapy treatments). In July 2018, she underwent a second endovenous laser treatment on her right leg. (AR 784-85).

These records plainly support the presence of a medically determinable varicose vein impairment, as they demonstrate anatomical and physiological abnormalities evidenced by diagnostic tests, clinical findings, and diagnoses from two licensed physicians. *See* (AR 386, 672); 20 C.F.R. §§ 404.1521, 416.921, 404.1502(a)(1), 416.902(a)(1). Yet, there is no discussion of any of these records in the ALJ's decision. *See* (AR 18-21). While not every record needs to be discussed, the ALJ is required to discuss significantly probative records such as these. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (noting that "an ALJ is not required to discuss every piece of evidence" but "in addition to discussing the evidence supporting his decision, the ALJ also must discuss…significantly probative evidence he rejects") (internal citations omitted). Without having discussed these records, the Court finds there is little evidence that the ALJ took this impairment into account in the RFC assessment, thereby calling into question whether the RFC is supported by substantial evidence. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) ("In determining [the] RFC, an ALJ must consider the limiting effects of all the claimant's impairment.") (citation and internal quotation marks omitted).

The Commissioner argues that having discussed Ms. Montoya's testimony

regarding her varicose veins, and her symptoms and limitations arising from it, the ALJ fulfilled his duty under SSR 16-3p. (Doc. 19 at 23-24). He also asserts that the objective evidence contradicted Ms. Montoya's subjective complaints, and Ms. Montoya's daily activities "detracted" from her subjective complaints. *Id.* at 23. While the Commissioner correctly notes that the ALJ considered Ms. Montoya's subjective complaints, the ALJ did not weigh Ms. Montoya's subjective complaints against pertinent objective evidence, namely Drs. Reddy and Vedamanikam's treatment records, which is an essential element of SSR 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *2 ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record.").

As for Ms. Montoya's daily activities "detracting" from her subjective complaints, the ALJ made no mention of this in the decision. *See* (AR 18-21). As such, the Commissioner's argument alleging the ALJ used this evidence to discount Ms. Montoya's subjective complaints constitutes impermissible post-hoc reasoning. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). In short, the Commissioner's failure to discuss Ms. Montoya's treatment records as they relate to her subjective complaints arising from her varicose vein impairment is contrary to the requirements of SSR 16-3p. For these reasons, the Court finds that the ALJ committed harmful error requiring remand.

   B. *The ALJ's Consideration of Ms. Montoya's Subjective Complaints Under SSR 96-8p*

Next, Ms. Montoya alleges the ALJ's failure to discuss her varicose veins violates SSR 96-8p. (Doc. 17 at 24-26). Having failed to properly credit her symptoms under SSR 96-8p, Ms. Montoya contends the decision's RFC is not based on substantial evidence. *Id.* at 26-27. The Commissioner does not directly address this argument, though he argues the RFC is supported by substantial evidence. (Doc. 19 at 11-14).

 Social Security Ruling 98-6p requires ALJs to provide an "RFC assessment [that] is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *3) (alteration made). "The concern underlying SSR 96-8p 'is that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *4).

Here, Ms. Montoya's treatment records with Dr. Reddy show numerous visits documenting abnormalities in her ultrasounds, swelling and edema in her legs, and multiple procedures to treat her varicose veins. These records are undoubtedly "relevant evidence," as they are consistent with and supportive of many of Ms. Montoya's subjective complaints. *See* (AR 672) (Dr. Vedamanikam writing that her "findings [were] consistent with most of the symptoms [Ms. Montoya] experiences.") (alterations made). That these records were not discussed, nor was her varicose vein impairment identified as a medically determinable impairment, indicates that the ALJ's RFC is not based on all relevant evidence relating to Ms. Montoya's ability to do work-

related activities in contravention of SSR 98-6p. For these reasons, the Court finds the ALJ committed harmful error requiring remand.

## V.     Conclusion

For the foregoing reasons, the Court finds the ALJ erred in his consideration of Ms. Montoya's varicose veins contrary to the requirements of SSR 16-3p and SSR 98-6p. Because the Court finds this is a harmful legal error, the Court will not address Ms. Montoya's remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Montoya's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (Doc. 17), is **GRANTED** and this case is **REMANDED** for additional proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE